IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

DOMINIC SOUTO DIAZ,

        Petitioner

vs.

OBERLANDER; SCI FOREST; DISTRICT
ATTORNEY OF THE COUNTY OF ERIE;
ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA,

        Respondents

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1:20-CV-00222-RAL

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

MEMORANDUM OPINION AND ORDER
ON PETITION FOR WRIT OF HABEAS
CORPUS

ECF NO. 4

Before the Court is a *pro se* Petition for a Writ of Habeas Corpus filed under 28 U.S.C.

§ 2254 (ECF No. 4) by Dominic Souto Diaz, a state prisoner incarcerated at the State

Correctional Institution at Albion.[1]  In his application, Diaz raises twelve claims he believes

entitle him to habeas relief.[2]  Many of these claims, however, were not properly exhausted in the

state court.  Thus, Diaz has presented a "mixed petition," which is subject to dismissal.[3]

I.      Factual Background

Diaz' state court conviction arises from the murder of Hercules Rieger, a bouncer at a

tavern/after-hours club called "The Bearded Lady," in Erie, Pennsylvania in August of 2014.

---

[1] 28 U.S.C. § 2254(a) confers jurisdiction upon this Court to hear a petition for writ of habeas corpus filed by an individual who claims to be in custody pursuant to a state court judgment in violation of the Constitution of the United States.

[2] Although the federal habeas statutes use the term "application," the federal courts, including the United States Supreme Court, use the term "petition" and "application" interchangeably. *See, e.g., Crabb v. Eckard*, 2015 WL 4879071, at *3 n.3 (M.D. Pa. Aug. 14, 2015).  This Court will do likewise.

[3] The Petitioner and Respondents have consented to the jurisdiction of a United States Magistrate Judge in these proceedings pursuant to 28 U.S.C. § 636(c).  *See* ECF Nos. 17, 19.

The Pennsylvania Superior Court, in affirming the judgment of sentence, recounted the factual

background and evidence that led to Diaz' arrest and conviction:

> On August 23, 2014, Appellant shot and killed a bouncer, Hercules
> Rieger, outside The Bearded Lady, an after-hours establishment
> located near 11th Street and Wayne Street in Erie, Pennsylvania. A
> resident of that neighborhood, Javon Martin, testified that he heard
> Appellant and Mr. Rieger, both known to him, arguing near the
> entrance of The Bearded Lady.  He saw Mr. Rieger punch
> Appellant.  He reported that Appellant collapsed to the ground
> after being struck by Mr. Rieger, but then arose and left the scene.
> Shortly thereafter, Mr. Martin observed Appellant walking back
> toward the club.  He saw Appellant retrieve a gun from his
> waistband and shoot Mr. Rieger.
>
> Another resident of the neighborhood, Jamie Barlorin, testified that
> he saw and heard two men arguing.  He later identified the men
> from a photographic array as Appellant and bouncer Marzell
> Stovall.  Mr. Barlorin saw Mr. Stovall strike Appellant in the head
> with a tire iron. Mr. Barlorin heard a gunshot approximately
> twenty minutes later and he placed a 911 call.
>
> Jomo McAdory was also working as a bouncer at The Bearded
> Lady the night of the shooting. He confirmed that there was a
> physical altercation involving Rieger and Appellant and that
> Appellant was knocked to the ground.  McAdory testified that,
> approximately ten to fifteen minutes later, he heard a gunshot and
> saw Rieger fall to the ground, but he did not see who fired the shot.
> Dr. Eric Vey, a forensic pathologist, testified that he performed an
> autopsy on the victim. He concluded that Mr. Rieger died due to a
> single gunshot wound to the chest.  The bullet pierced the
> breastbone, impacted the right side of the heart, went into the liver,
> and back to the chest again where it struck the lower right lobe of
> the lung.  Based on a lack of stippling in the wound and the point
> of entry of the bullet, he opined that the shooter was more than two
> feet from the victim and facing him when the fatal shot was fired.
> Raymond MacDonald, a senior manager of the law enforcement
> management group for T-Mobile, verified that phone calls made
> from the phone Appellant was carrying just prior to his arrest
> placed him in the vicinity of the murder when it occurred.
>
> Appellant offered an expert who offered the contrary opinion that
> the phone records placed Appellant anywhere from .84 to 2.75
> miles from the scene at the time of the shooting. He also attempted
> to discredit the eyewitness testimony of Mr. Martin, who was in

jail on a parole violation, with testimony of Mr. Martin's jail mates
that Mr. Martin told them Appellant was not at the scene.

On May 14, 2015, a jury returned a guilty verdict against
Appellant on all counts. On July 17, 2015, Appellant was
sentenced to life imprisonment on the first-degree murder
conviction and twelve to twenty-four-months imprisonment for
possessing an instrument of a crime, which was to run consecutive
to the life sentence. The convictions for aggravated assault and
recklessly endangering another person merged with the murder
charge. The court imposed a twenty-four to forty-eight-month term
of imprisonment to run concurrent to the life sentence on the
firearms offense.[4]

*Commonwealth v. Diaz*, 2016 WL 4708937, at *1–2 (Pa. Super. Ct. June 24, 2016).

II.    Procedural History

In recounting the procedural history of this case, the Court takes judicial notice of the

state court's trial and appellate dockets in criminal case CP-25-CR-0003451-2014, which are

available to the public online at https://ujsportal.pacourts.us (last visited on March 16, 2022).

*See, e.g., Burley v. Parra*, 2021 WL 4594674, at *1 (W.D. Pa. Oct. 6, 2021). Citation to the state

court dockets will be omitted, unless necessary for clarity or emphasis. After filing post-

sentence motions, Diaz appealed to the Pennsylvania Superior Court. That court affirmed his

conviction and sentence. *See id.* He did not seek allowance of appeal to the Supreme Court of

Pennsylvania. Instead, Diaz filed a motion seeking relief under Pennsylvania's Post Conviction

Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541-9546. Counsel was appointed for Diaz and, after an

evidentiary hearing, the PCRA court denied relief.[5] Diaz then appealed to the Superior Court,

---

[4] This Court presumes that the Superior Court's factual findings were correct. See 28 U.S.C. § 2254(e)(1).

[5] The Pennsylvania Courts of Common Pleas have original jurisdiction over PCRA petitions. 42 Pa. Cons. Stat. Ann.
§ 9545(a). PCRA dispositions from the Courts of Common Pleas are appealable to the Pennsylvania Superior
Courts. *See, e.g., Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007). Herein, the Court will refer to the
Court of Common Pleas that heard Diaz' PCRA petition as the "PCRA court." *See, e.g., Boyer v. Houtzdale*, 620
Fed. Appx. 118, 121, n.2 (3d Cir. Aug. 4, 2015).

which affirmed.  *See Commonwealth v. Diaz*, 2019 WL 6999901 (Pa. Super. Ct. Dec. 20, 2019).

He then filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania.  The

Supreme Court denied his petition.  *See Commonwealth v. Diaz*, 237 A.3d 389 (Pa. July 1, 2020)

(Table).  Diaz filed the instant application for habeas relief about a month thereafter.[6]

III.    Standards of Decision

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in

violation of the law."  *Harrington v. Richter*, 562 U.S. 86, 91 (2011).  Federal courts reviewing

habeas corpus petitions "must be vigilant and independent ... a commitment that entails

substantial judicial resources."  *Id.*  This vigilance and independence must be balanced, however,

against the concomitant role of the state courts.  To that end, the United States Supreme Court

has cautioned federal courts to remember

> … that direct appeal is the primary avenue for review of a
> conviction or sentence ….  The role of federal habeas proceedings,
> while important in assuring that constitutional rights are observed,
> is secondary and limited.  Federal courts are not forums in which
> to relitigate state trials.

*Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

That secondary and limited role is reflected in the federal habeas statute applicable to

state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty

Act ("AEDPA").  That statute "imposes significant procedural and substantive limitations on the

---

[6] Diaz' initial Petition for Writ of Habeas Corpus was docketed on August 14, 2020.  ECF No. 4.  On September 2, 2020, Diaz filed a Motion to Amend his Petition [ECF No. 6] and a proposed amendment, *see* ECF No. 5, which was initially docketed as a Brief in Support of his Petition.  On September 25, 2020, the Court granted Diaz' motion to amend and directed the Clerk to docket the filing at ECF No. 5 as the Amended Petition.  That document, docketed at ECF No. 10, remains the operative pleading in this action.  Subsequently, Diaz filed several documents that he characterized as either "amendments" or "supplements" to his Amended Petition.  *See* ECF Nos. 13, 31, 34. Although styled as amendments, none of those filings contained additional claims or grounds for relief; rather, they simply raised additional arguments in support of Diaz' existing *Brady* and ineffective assistance of counsel claims. Accordingly, the Court treated each of those filings as raising supplemental arguments in support of the Amended Petition, rather than amendments.

scope" of a federal court's review. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017).  Under 28 U.S.C. § 2254, federal courts must give considerable deference to determinations of state trial and appellate courts. *See Turner v. Ransom*, 2021 WL 2581251, at *2 (W.D. Pa. June 23, 2021) (citing *Renico v. Lett*, 599 U.S. 766, 772 (2010)).  It is Diaz' burden, as the petitioner, to prove he is entitled to the writ. *Id.*; *see also Turner*, 2021 WL 2581251, at *1 (citing *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017)).

Before the Court can review the merits of Diaz' claims, he must first satisfy specific and precise procedural requirements. *See, e.g., Smart v. Pennsylvania*, 2021 WL 1091277, at *3 (M.D. Pa. Feb. 16, 2021).  The Supreme Court has explained the gate-keeping function of these procedural requirements: "The [AEDPA] established a stringent set of procedures that a prisoner 'in custody pursuant to the judgment of state court'" must follow when seeking the Great Writ. *Burton v. Stewart*, 549 U.S. 147, 152 (2007) (citing 28 U.S.C. § 2244(b)).  These "intentionally restrictive" prerequisites include a statute of limitations for filing a habeas petition and a constraint that any claims be first exhausted in the state courts. *See, e.g., Bond v. Walsh*, 2020 WL 6939883 at *4 (E.D. Pa. Nov. 24, 2020).  Under the AEDPA, a petition for habeas relief must be filed within one year from "the date on which the judgment became final by conclusion of direct review or the expiration of time for seeking such review." *Burton*, 549 U.S. at 156-57 (citation to statute omitted).  The statute further mandates that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 201)

A.      Timeliness

The AEDPA imposes a one-year limitations period for state prisoners seeking federal habeas review.  It is codified at 28 U.S.C. § 2244(d) and provides:

> (1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry.  First, a court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1).  *See Caldwell v. Mahally, et al.*, 5741706, *5 (W.D. Pa. Nov. 5, 2019).  Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute under section 2244(d)(2).  *Id.*  And third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.  *Id.*

As noted above, Diaz' petition raises numerous claims relating to his conviction. The "trigger date" for these claims is the date on which Diaz' judgment of sentence became final. *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final after direct review or the expiration of time for seeking such review, including the time limit (90 days) for filing a writ of certiorari in the United States Supreme Court). Upon the conclusion of his trial, Diaz appealed to the Superior Court, which affirmed his conviction and resentencing on June 24, 2016. Diaz had until July 24, 2016, to file a petition for allowance of appeal with the Supreme Court of Pennsylvania, but did not do so. The AEDPA clock thus began running thirty days later, on July 25, 2016. *See* 42 Pa. C.S.A. § 9545(b)(3); Pa. R. A. P. 1113(a). This made his habeas petition initially due on or before July 25, 2017.

The AEDPA clock stopped running on June 8, 2017, upon Diaz' filing of a PCRA petition.[7] At this point, 318-days had elapsed on the AEDPA clock and the clock remained tolled while Diaz' petition remained pending. *See* 28 U.S.C. § 2244(d)(2) (providing that the time during which a "properly filed" petition for collateral relief is pending is not counted toward the one-year statute of limitations). Diaz' petition remained pending in the state court until July 21, 2020, when the Supreme Court of Pennsylvania denied Diaz' petition for allowance of appeal. At that point, the forty-seven days remaining on Diaz' ADEPA clock meant that his habeas corpus petition needed to be filed by Tuesday, September 7, 2020.[8] Again using the

---

[7] The Superior Court noted that "[p]ursuant to the prisoner mailbox rule, [Diaz'] pro se PCRA filing is [sic] the date he placed it in the hands of prison authorities for mailing (i.e., postmark date). Here, [Diaz'] Certificate of Service is dated June 8, 2017, and his Petition is docketed June 12, 2017, but we lack evidence of when [Diaz] placed his petition in the hands of the postal authorities. However, pursuant to either date, the Petition is timely." *Commonwealth v. Diaz*, 2016 WL 4708937, at *2 n.1 (Pa. Super. Ct. June 24, 2016). Diaz certified that he gave his post-conviction petition to prison officials for mailing on June 8, 2017 (see ECF No. 20-3, p. 51), and this Court will deem it filed as of that date. *See, e.g., Blackwell v. Superintendent, SCI-Somerset*, 2022 WL 659192, at *2 n.2 (E.D. Pa. Jan. 11, 2022).

[8] Forty-seven days from July 21, 2020, was Sunday, September 6, 2020. Because Monday, September 7, 2020, was a federal holiday (Labor Day), Diaz had until September 8, 2020, to timely file his petition.

prisoner mailbox rule, Diaz filed his petition for habeas relief on August 1, 2020, the date he

signed it.  Thus, Diaz' petition was timely filed.

      B.     Exhaustion and Procedural Default

      As a general matter, a federal district court may not consider the merits of a habeas

petition unless the petitioner has "exhausted the remedies available" in state court.  *See* 28

U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  A petitioner satisfies

the exhaustion requirement "only if [the petitioner] can show that [he or she] fairly presented the

federal claim at each level of the established state-court system for review." *Holloway v. Horn*,

355 F.3d 707, 714 (3d Cir. 2004).  The purpose of the exhaustion requirement is to "give the

state courts a full and fair opportunity to resolve federal constitutional claims before those claims

are presented to the federal courts ... by invoking one complete round of the State's established

appellate review process." *O'Sullivan*, 526 U.S. at 845.

      To "fairly present" a claim for exhaustion purposes, the petitioner must advance the

claim's "factual and legal substance to the state courts in a manner that puts them on notice that a

federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280

(3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).  A petitioner

may exhaust a federal claim either by raising it on direct appeal or presenting it in post-

conviction PCRA proceedings.  *O'Sullivan*, 526 U.S. at 845; *see also Bell v. Cone*, 543 U.S. 447,

451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Either way, the petitioner must

present his federal constitutional claims "to each level of the state courts empowered to hear

those claims." *Id.* at 847 ("requiring state prisoners [in order to fully exhaust their claims] to file

petitions for discretionary review when that review is part of the ordinary appellate review

procedure in the State").  "In Pennsylvania, the fair presentation requirement means that a

petitioner must bring the claim to the Pennsylvania Superior Court." *Gibbs v. Estock*, 2021 WL 1842717, at \*2 (E.D. Pa. Apr. 22, 2021), *report and recommendation adopted*, 2021 WL 1837431 (E.D. Pa. May 7, 2021), *certificate of appealability denied sub nom. Gibbs v. Superintendent Pine Grove SCI*, 2021 WL 5859469 (3d Cir. Aug. 24, 2021) (other citations omitted). "Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied." *Stoss v. Estock*, 2019 WL 2160464, at \*3 (M.D. Pa. May 17, 2019) (citing *Castille v. Peoples*, 489 U.S. 346, 350 (1989)).

An important corollary to the exhaustion requirement is the doctrine of procedural default. "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of those claims "in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Procedural default intertwines with exhaustion in this way: when a claim has never been "'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied" because of the lack of available state process, but the claims "are considered to be procedurally defaulted." *McKenzie v. Tice*, 2020 WL 1330668, at \*5 (M.D. Pa. Mar. 23, 2020) (quoting *McCandless,* 172 F.3d at 261. Such claims may not ordinarily be reviewed by a federal court. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule.") (citations omitted).

Several caveats exist. First, "[a] state procedural rule can preclude federal habeas corpus review" only when the state rule is "independent of the federal question [presented] and adequate

to support the judgment." *McKenzie*, 2020 WL 1330668, at *5 (quoting *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007)). A rule is "independent" if it is not "'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." *Id.* (quoting *Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004)). A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *Levya*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

Second, a petitioner can overcome procedural default, thereby permitting federal court review, if the petitioner can establish either: (1) "cause" for the default and "actual prejudice" because of the alleged violation of federal law; or (2) that the failure to consider the claims will create a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To establish cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with a state procedural rule. *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To establish a fundamental miscarriage of justice, a habeas petitioner must typically show actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-26 (1995). With these standards and rules in mind, the Court now turns to a discussion of Diaz' claims.

C.      Diaz has not properly exhausted several of his claims.

A habeas petitioner has the burden of showing all his claims have been "fairly presented" to the state courts, which demands, in turn, that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts. *Santana v. Fenton*, 685 F.2d 71, 73-74 (3rd Cir. 1982), *cert. denied*, 459 U.S. 1115 (1983). A determination whether a claim has

been fairly presented is made by comparing the claims raised in Diaz' petition to those raised in

state court.[9]  On direct appeal to the Superior Court, Diaz only raised two issues:

- Did the trial court err when it denied Diaz' post-sentence motion claiming insufficient evidence where there was no evidence of malice or specific intent to kill where an eyewitness testified Diaz appeared drunk and had recently been beaten with a tire iron?

- Ineffective assistance of trial counsel for failing to request a jury instruction (or address the issue in his closing argument) on diminished capacity or involuntary manslaughter where there was testimony Diaz had been beaten and appeared drunk?

*See* ECF No. 32-13, pp. 26-27.  In his appeal to the Superior Court following the denial of PCRA

relief, Diaz again only raised two issues:

- Trial counsel was ineffective for not objecting to the Commonwealth['s] improper remarks misrepresenting and putting on false evidence in opening and closing arguments in violation of Appellant's Sixth and Fourteenth Amendment.

- Trial court erred when it dismissed Appellant['s] PCRA petition, alleging the Commonwealth failed to turn over discovery information pursuant to *Brady v. Maryland* in violation of Appellant['s] Fourteenth Amendment right to due process.

*See* ECF No. 32-17, pp. 10-11.  His federal petition is far more expansive and includes numerous

claims as summarized in the following chart:

| Federal Claim | Ground for Relief |
| --- | --- |
| 1 | The Commonwealth violated Diaz' 14th Amendment due process rights by failing to turn over discovery and lying about it in violation of *Brady v. Maryland.* ECF No. 4, p. 5, |
| 2 | Ineffective assistance of trial counsel for failure to object during Commonwealth's opening and closing in which the prosecutor said Diaz' cellphone was at the crime scene. ECF No. 4, p. 7. |
| 3 | PCRA counsel was ineffective for "failing to develop claims and/or arguing trial counsel's ineffectiveness for not impeaching certain prosecution witnesses. ECF No. 4., p. 9. |
| 4 | PCRA counsel was ineffective for failing to preserve a claim that the prosecution committed perjury by not disclosing the "deal" with witness Javon Martin. ECF No. 4, p. 10. |

---

[9] The Pennsylvania Superior Court's decisions on direct appeal and on appeal of Diaz' PCRA petition are the primary reference points in addressing his exhausted claims in the instant habeas petition. *See Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (in considering a § 2254 habeas petition, the federal court must review the "last reasoned decision of the state courts on the petitioner's claims" (citing *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)).

| 5 | PCRA counsel was ineffective for not arguing trial counsel's ineffectiveness in failing to argue that Diaz was left handed, which contradicts a witness' testimony at the preliminary hearing that Diaz used his right hand. ECF No. 4-1, p. 4. |
|---|---|
| 6 | PCRA counsel was also ineffective for not arguing trial counsel's ineffectiveness in failing to argue "time to distance" relating to the crime scene and where Diaz' phone was located. ECF No. 4-1, p. 5 |
| 7 | Actual innocence as a "gateway" to "introduce any and all claims that may be waived." ECF No. 4-1, p. 6. |
| 8 | Trial counsel was ineffective for not objecting to the Commonwealth witness' "lying" about a "deal with a key witness." ECF No. 4-1, p. 6. |
| 9 | Trial counsel was ineffective for failing to impeach Commonwealth's witness with impending charges. ECF No. 4-1, p. 7. |
| 10 | Trial counsel was ineffective for failing to impeach Commonwealth's witnesses with alleged conflicting testimony. ECF No. 4-1, pp. 6-7. |
| 11 | Trial counsel was ineffective for failing to request a "polluted source" or biased witness instruction. ECF No. 4-1, p. 7. |
| 12 | A claim that the cumulative effect of these errors entitled Diaz to habeas relief. ECF No. 4-1, p. 7. |

For clarification, Diaz' habeas claims are grouped into three categories. First, Diaz raises stand-alone habeas claims: Claim 1 (*Brady* violation), Claim 7 (Actual innocence), and Claim 12 (cumulative error). Second, Diaz raises ineffective assistance of trial counsel claims: Claims 2, 8, 9, 10, and 11. Finally, Diaz brings four claims alleging post-conviction counsel's ineffectiveness: Claims 3, 4, 5, and 6.

Although some of these claims were presented to the Superior Court, and thus were exhausted, many of them were not. For example, Diaz raised a *Brady* claim (Claim 1) and an ineffectiveness claim relating to trial counsel's failure to object to the Commonwealth's argument regarding the location of his cell phone (Claim 2) to the Superior Court.[10] *See Diaz*, 2019 WL 6999901, at *5 (appeal from PCRA court). But his other ineffective assistance of trial counsel claims were not raised to the Superior Court, either on direct appeal or appeal from the

---

[10] The sufficiency of the evidence claim Diaz raised on direct appeal to the Superior Court was not re-alleged in his habeas petition.

denial of post-conviction relief.  These include Diaz' claims that his trial counsel was ineffective for failing to object to a witness' lying about a plea deal (Claim 8); for failing to impeach a prosecution witness with pending charges (Claim 9); for failing to impeach a prosecution witness with conflicting testimony (Claim 10); and for failing to request a "polluted source" instruction (Claim 11).  Therefore, Claims 8, 9, 10, and 11 were not properly exhausted.

Diaz' claims of ineffective assistance of post-conviction counsel are likewise not exhausted.  Diaz himself acknowledges this.  ECF No. 5, p. 22.  He admits, for example, that Ground 3—his claim that PCRA counsel was ineffective for not impeaching Javon Martin regarding Diaz being left-handed—was not exhausted as was Ground 4, his claim that PCRA counsel was ineffective for not objecting to the Commonwealth's "vouching" during opening and closing statements.  *See* ECF No. 5, pp. 22-27.  Therefore, he has presented a mixed petition which is subject to dismissal under *Rose v. Lundy*, 455 U.S. 509, 522 (1982).

D.      The unexhausted claims are procedurally defaulted.

The general rule is that a district court should dismiss a mixed petition without prejudice to the state prisoner's right to file another federal habeas case after he or she completes exhaustion of the claims at issue in state court.  *See, e.g., Platt v. Atty. Gen. of Pennsylvania*, 2022 WL 79741, at *2 (W.D. Pa. Jan. 7, 2022) (citing *Rose*, 455 U.S. at 509 and *Coleman*, 501 U.S. at 731).  Failing to do so would "depriv[e] the state courts of the 'opportunity to correct their own errors, if any.'"  *Williams v. Overmyer*, 2020 WL 9748998, at *15 (E.D. Pa. Aug. 31, 2020) (quoting *Toulson v. Beyer*, 987 F.2d 984, 989 (3d Cir. 1993)).  But while technically a mixed petition, Diaz' application will not be dismissed on that ground because his unexhausted claims are procedurally defaulted.  *See, e.g., Dean v. Tice*, 2020 WL 2983325, at *7 (W.D. Pa. June 2, 2020).

13

1.      Claims 8, 9, 10, 11 alleging the ineffective assistance of trial counsel are procedurally defaulted.

First, Diaz' ineffective assistance of trial counsel claims are procedurally barred because Diaz did not appeal them to the Superior Court.  Diaz filed a petition for PCRA relief in which he argued that his trial counsel was ineffective for:

1.      Placing me closer to the scene of the murder than I really was as evidence shows;

2.      Not calling my alibi who would of [sic] greatly aided my case;

3.      Not objecting to the DA misrepresenting and putting on false evidence telling jurors my phone was on eastside when it really was on the westside;

4.      Not having someone time the distance from the crime scene to where my phone was;

5.      Not doing a voir dire on defense cellphone guy because he's not an expert;

6.      Not obtaining a continuance when he didn't talk to witnesses;

7.      Not striking jurors who was [sic] biased;

8.      Not requesting a polluted soure [sic] instruction, a bias of witness instruction, a testimony of witness who used drugs instruction, or a *crimen falsi* on Javon Martin;

9.      Failing to call witness Richard Hoover to verify he only heard one shot when key witness said he heard two or three;

10.     Failing to offer evidence of me being left handed when key witness said I used my right hand to shoot the victim;

11.     Failing to impeach key witness for multiple lies he told;

12.     Failing to introduce picture[] of crime scene and getting a crime scene reconstruction expert to prove the victim did not get shot where the witness said he got shot at;

13.     Failing to find out what the results of the blood found by the front door was;

14

14.    Failing to request victim['s] shirt be tested for gun powder
       when a witness said she seen a punch being thrown and fire
       from a gun to prove the shooter wasn't 10-12 feet away;

15.    Failing to request the Judge to mention exactly what the
       false information the news said about me;

16.    Not objecting when the DA vouched for her witness and
       the supposedly 60 to 100 people and when she said he was
       killed immediately; and

17.    Not arguing heat of passion or diminished capacity if the
       jury believed   the Commonwealth.

ECF No. 32-14, pp. 4-7.

        Appointed PCRA counsel filed a supplemental petition, raising two additional issues:

first, whether the prosecuting attorney committed misconduct by not revealing that the DA's

office offered witness Javon Martin significant favorable treatment in exchange for his testimony

against Diaz, and second, whether trial counsel was ineffective for failing to call two exculpatory

witnesses: Diaz' brother Attila and Valentino Moore, who were with Javon Martin the night of

the murder.  *See* ECF No. 32-16, p. 3 (PCRA Court's opinion and final order quoting

supplemental petition).[11]  Diaz himself also raised an additional claim to the PCRA court during

its evidentiary hearing which was not part of his pro se petition: whether trial counsel was

ineffective for "failing to object to the DA's closing statement regarding the location of

Defendant's cell phone near the crime scene at the time of the murder."  *Id.*

        The PCRA court considered all these claims, specifically noting Diaz' "17 issues" as well

as PCRA counsel's additional claims and Diaz' additional claim raised orally at the evidentiary

hearing.  The PCRA court denied relief as to each.  *See* ECF No. 32-16, p. 3 (PCRA court

opinion).  But in appealing that decision to the Superior Court, Diaz chose to raise only two

---

[11] PCRA counsel's supplemental petition is absent from the state court record.

issues: trial counsel's ineffectiveness for not objecting to the prosecutions' remarks during

opening and closing statements (Habeas Claim 2) and an alleged *Brady* violation (Habeas Claim

1). *See Diaz*, 2019 WL 6999901 at *4. He did not appeal his other ineffective assistance of

counsel claims (which are associated with Habeas Claims 8, 9, 10, and 11). Thus, these claims

are procedurally defaulted. *See, e.g., Chisley v. Kauffman*, 2019 WL 8301638, at *3 (M.D. Pa.

Nov. 15, 2019), *report and recommendation adopted*, 80, 2020 WL 1445979 (M.D. Pa. Mar. 25,

2020). *See also Whitney v. Horn*, 280 F.3d 240, 252 (3d Cir. 2002); *Coleman*, 501 U.S. at 735

n.1. Diaz has not offered any compelling argument to establish cause for the default or that a

fundamental miscarriage of justice will occur if this Court does not consider his claims, as is his

burden. *Coleman*, 501 U.S. at 750. Therefore, his ineffective assistance of trial counsel claims

will be dismissed as procedurally defaulted.

> 2.      Claims 3, 4, 5, and 6 alleging the ineffective assistance of post-conviction
>         counsel are procedurally defaulted.

Diaz' habeas petition also asserts four claims alleging his PCRA counsel's

ineffectiveness for failing to raise trial counsel's ineffectiveness (Claims 3, 4, 5, and 6). *See,*

*e.g.*, ECF No. 5, pp. 9-15, ECF No. 4-1, pp. 1-8. These claims are likewise procedurally

defaulted because they were not appealed to the Superior Court. Diaz believes that this

procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1, (2012). But *Martinez*

cannot be used to save these claims. The Supreme Court in *Martinez* defined "initial-review

collateral proceeding" as a collateral proceeding that provides the first occasion to raise a claim

of trial counsel's ineffective assistance. *Id*. at 9. In Pennsylvania, that is the proceeding before

the PCRA court. The Supreme Court's decision in *Martinez* was influenced by the fact that

"[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at

any level will hear the prisoner's claim." 566 U.S. at 10. The Supreme Court further held that

because this concern is not present in "appeals from initial-review collateral proceedings," a petitioner may not use attorney error in a collateral appeal as cause to excuse a procedural default. *Id.* at 16 (emphasis added); *Norris v. Brooks*, 794 F.3d 401, 404-05 (3d Cir. 2015) (*Martinez* "applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals").

Diaz raised the underlying ineffectiveness alleged in these claims in his *pro se* post-conviction petition but he did not appeal them to the Superior Court. His failure to do so means that the Superior Court did not review these ineffective assistance of counsel claims and thus they too are procedurally defaulted. Put another way, *Martinez* does not excuse the procedural default because the default of these claims did not occur during Diaz' first collateral review proceeding; indeed he raised them to the PCRA court in his *pro se* petition.[12] *See Cox v. Horn*, 757 F.3d 113, 120 and n.8 (3d Cir. 2014) (initial-review collateral proceedings are the first collateral proceeding in which the claim could be heard). And Diaz' claims were heard during his first collateral proceeding—his PCRA hearing—wherein the PCRA court specifically noted his "17 claims" in its opinion. The default of these claims occurred when Diaz failed to pursue them during his appeal of the denial of his PCRA petition to the Superior Court. *See Diaz*, 2019 WL 699901 at *2. *See also Savoy v. McGinley*, 2020 WL 11723984, at *4 (E.D. Pa. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 4776342 (E.D. Pa. Oct. 13, 2021) (finding procedural default where petitioner raised claims in PCRA petition but did not appeal those claims to the Superior Court). Therefore, *Martinez* does not excuse petitioner's default. *See,*

---

[12] And, as the Superior Court noted, PCRA counsel did not incorporate these claims by reference in Diaz' supplemental petition. *See Diaz*, 2019 6999901 at *2 (citing *Commonwealth v. Cherry*, 155 A.3d 1080, 1083 (Pa. Super. Ct. 2017 (holding PCRA counsel's duty is to amend a pro se petition and present it in legal terms or certify that the claims lack merit).

*e.g., Dooley v. Tice*, 2019 WL 8356734, at *9 (E.D. Pa. Aug. 15, 2019), *report and recommendation adopted*, 2020 WL 1666476 (E.D. Pa. Apr. 3, 2020).

     E.     Summary of Defaulted Claims

By way of partial summary, the Court concludes that Claims 3, 4, 5, 6, 8, 9, 10, and 11 are procedurally defaulted. This leaves the following exhausted claims for consideration on the merits: Claim 1 relating to an alleged violation under *Brady, supra.*; Claim 2 as concerns trial counsel's ineffectiveness for failing to object during the prosecution's opening and closing remarks regarding Diaz' cellphone; Claim 7, in which Diaz raises his actual innocence; and Claim 12, a cumulative error claim. Each of these claims will now be reviewed on the merits.

IV.     Discussion and Analysis of Remaining Claims

     A.     Standards of Decision

In reviewing the merits of a habeas claim, the typical "first step" is for the Court to identify the appropriate standard of review. If the claim was adjudicated on the merits in the state court, the federal court is required to review the state court's decision with deference. *See, e.g., Dixon v. Mahally*, 2021 WL 5883161, at *7 (W.D. Pa. Dec. 13, 2021). If the claim was not adjudicated on the merits by the state court, the federal court conducts its review *de novo*. *Bennett v. SCI Graterford*, 886 F.3d 268, 281 (3d Cir. 2018). And, in those cases where it is unclear whether AEDPA deference applies, federal "[c]ourts can ... deny writs of habeas corpus under § 2254 by engaging in de novo review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (citing 28 U.S.C. § 2254(a)). In some cases, it is not necessary to determine whether the habeas claims were "adjudicated on the merits" for purposes of determining which standard of review applies where a petitioner cannot show he or she is entitled to relief under "the more favorable" *de novo* standard of review. *See, e.g., Hannibal v. Gilmore*, 2021 WL 4597084, at *15 (E.D. Pa.

Feb. 23, 2021), *report and recommendation adopted*, 2021 WL 4592189 (E.D. Pa. Oct. 6, 2021)

(citing *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can ... deny writs of habeas

corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA

deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his

or her claim is rejected on de novo review[.]") (citing 28 U.S.C. § 2254(a)); *Waller v. Varano*,

562 Fed. Appx. 91, 93 (3d Cir. 2014)).

Here, because it is clear that the Superior Court considered both remaining claims on the

merits, this Court applies deference to the state court's resolution of those issues. Where the

state court has adjudicated the merits of a petitioner's habeas claims, federal habeas relief is

available only if the state court's decision was (1) "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court," or (2)

"based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." *Becker v. Sec'y Pennsylvania Dep't of Corr.*, 2022 WL 829765, at \*1

(3d Cir. Mar. 21, 2022). (quoting 28 U.S.C. § 2254(d)).

B. Claim 1: The Commonwealth violated Diaz' 14th Amendment due process rights
by failing to turn over discovery and lying about it in violation of *Brady v.
Maryland*.

In this claim, Diaz argues that the Commonwealth denied that they reached a deal with

witness Javon Martin whereby he would testify against Diaz in exchange Martin's early release.

*See* ECF No. 5, p. 4. He also claims that the Commonwealth withheld information from the

defense relating to this deal. *Id*. at p. 6. This claim implicates the Supreme Court's decision in

*Brady v. Maryland, supra*. A prosecutor's affirmative duty to disclose evidence favorable to a

defendant can be traced to early twentieth century prohibitions against misrepresentation. *See*

*Rojas v. Capozza*, 2017 WL 9288171 at \*7 (E.D. Pa. Nov. 21, 2017). Such claims, however, are

19

primarily associated with the Supreme Court's decision in *Brady v. Maryland, supra*. "*Brady*

obligations attach to all exculpatory evidence in the government's actual or constructive

possession." *Maynard v. Gov't of the Virgin Islands*, 392 Fed. Appx. 105, 113 (3d Cir. 2010).

"Exculpatory evidence" is that which "goes to the heart of the defendant's guilt or innocence as

well as that which might well alter the jury's judgment of the credibility of a crucial prosecution

witness." *United States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984) (citing *Giglio v. United

States*, 405 U.S. 150, 154 (1972)). The Supreme Court has explained that "[t]here are three

components of a true *Brady* violation: The evidence at issue must be favorable to the accused,

either because it is exculpatory, or because it is impeaching; that evidence must have been

suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Put another way, "[t]o establish a *Brady*

violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to

the defense; and (3) the evidence was material to guilt or punishment." *Simmons v. Beard,* 590

F.3d 223, 233 (3d Cir. 2009) (quotation omitted).

   Not every failure to disclose favorable evidence gives rise to a constitutional violation.

*Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). Instead, a *Brady* violation only occurs where

there is a reasonable probability that the suppressed evidence would have produced a different

verdict, *i.e.*, the suppressed evidence was "material." *Strickler*, 527 U.S. at 281. A reasonable

probability is shown when the government's suppression undermines confidence in the outcome

of the trial. *Kyles*, 514 U.S. at 434.

   Here, the Superior Court considered the exact *Brady* claim Diaz now raises in his habeas

petition and concluded it was meritless. *See Diaz*, 2019 WL 6999901 at *7. In doing so, the

Superior Court correctly identified *Brady* as the applicable law and succinctly articulated its

standard, with appropriate citation to the Supreme Court's opinion:

> Specifically, a *Brady* claim requires a petitioner to show "(1) the
> prosecutor has suppressed evidence, (2) the evidence, whether
> exculpatory or impeaching, is helpful to the defendant, and (3) the
> suppression prejudiced the defendant."

*See id.* (quoting *Commonwealth v. Carson*, 913 A.2d 220, 244 (Pa. 2006) (which applied *Brady*,

373 U.S. at 83)).  And after conducting a thorough review of the record, the Superior Court

reasonably applied *Brady's* holding in concluding that Diaz had failed to identify the suppression

of any material evidence by the prosecution.  *Id.*, at *10.  The Court held:

> … even had the jury known that ADA Connelly [the prosecuting
> attorney] told Martin, after he provided his videotaped deposition
> to the police, but before his revocation hearing, that she would go
> to bat for him at his revocation hearing, it would not have made a
> substantial difference in the outcome of the trial.  Therefore, we
> find that whether Attorney Connelly told Martin she would go to
> bat for him before or at his revocation hearing is a non-material
> issue.

*Id.*  The Superior Court noted three important facts in support of its conclusion.  First, the court

observed that prior to trial, the prosecutor "fully disclosed her promise to help Martin at his

revocation hearing."  *Id.*  Second, the state court noted that Martin's deal with the prosecution

was divulged to the jury.  *Id.*  And third, the Superior Court pointed to the fact that the prosecutor

did not promise Martin any assistance until after Martin made his statement to police identifying

Diaz as the shooter.  *Id.*

In arguing that the state court's factual determinations were unreasonable, Diaz points to

the decision of the PCRA court.  *See* ECF No. 5, pp. 7-9.  His argument, however, is misplaced

because it seeks relief based on an error purportedly made by the Erie County Court of Common

Pleas, the PCRA court.  *See id.*  A federal court reviewing a habeas corpus petition reviews the

"last reasoned decision" of the state courts that addressed the petitioner's claim. *See Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)). Here, the last reasoned decision addressing Diaz' *Brady* claim was the Superior Court's decision on appeal from the denial of his PCRA petition. *See Diaz*, 2019 WL 6999901 at *9-10. Thus, it is immaterial whether the PCRA court erred; the relevant question for this Court is whether the Superior Court's decision was unreasonable or contrary to clearly established law. *See Simmons*, 590 F.3d at 231-32; 28 U.S.C. § 2254(d).

Having reviewed the Superior Court's decision with appropriate deference, this Court now concludes that its resolution of Diaz' *Brady* claim was not unreasonable or contrary to clearly established federal law. Its conclusion that the alleged *Brady* information was presented to the jury and thus, was not material, conforms to the standards set out in the Supreme Court's decision in *Brady* and its progeny, and is a reasonable application of those standards. *See Turner v. United States*, --- U.S. ---, 137 S. Ct. 1885, 1893 (2017) (stating that evidence is material under *Brady* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different"). Therefore, habeas relief is denied on this claim.

> C. Claim 2: Ineffective assistance of trial counsel for failing to object during the Commonwealth's opening and closing statements regarding Diaz' cellphone being present at the scene of the crime.

Diaz alleges that his trial counsel was ineffective for not objecting to certain statements made by the prosecuting attorney during her opening and closing remarks. He contends the prosecutor falsely stated that Diaz' cellphone "put me at the crime scene and it fits the timeline." ECF No. 4, p. 7. Specifically, Diaz objects to the following comment of the prosecuting attorney during her closing statement:

> So we back up to here. Here, ironically enough, is going to put us
> between that 2:35 and 2:43 number before [Diaz] starts coming
> back this way. So we know that around the time the shot
> was fired, he's there. His phone is there. His phone is picking up that
> tower.

ECF No. 5, p. 12 (quoting Trial Transcript at p. 140). He argues that "this information was false

and the Commonwealth knew it." *Id.* Diaz argues that "the murder is [sic] on the eastside and

both experts put [him] on the westside at 2:35 and 2:43" and his trial counsel prejudiced him by

not objecting to the prosecutor's characterization. *Id.*

Diaz raised this identical claim to the Superior Court on appeal from the denial of his

PCRA petition. That Court summarized Diaz' claim as follows:

> Appellant asserts that trial counsel erred in failing to object to the
> Commonwealth's improper argument during closing arguments.
> Appellant contends that the prosecutor misrepresented to the jury
> evidence offered by expert witnesses regarding Appellant's
> physical location, at the time of the murder, through the use of cell
> phone technology.

*Diaz*, 2019 6999901 at *5.

When addressing the merits of ineffective assistance of counsel claims, the "clearly

established federal law" applicable to such claims is the familiar two-pronged inquiry set out by

the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first prong of

*Strickland*, Diaz must show that his trial counsel's performance was deficient. In other words, he

must demonstrate that trial counsel's representation "fell below an objective standard of

reasonableness." *Id.* at 687-88. The second prong requires Diaz to show that trial counsel's

"deficient performance prejudiced the defense." *Id.*, at 687. Prejudice is established by

demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors,

the results of the proceeding would have been different." *Id.* at 694. But *Strickland* admonishes

that "a court must indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance; that is [Diaz] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal citations omitted).

The United States Supreme Court recently discussed "the special importance of the AEDPA framework in cases involving *Strickland* claims." *Shinn v. Kayer*, --- U.S. ---, 141 S. Ct. 517 (2020).  In *Shinn*, the Supreme Court once again made clear that "federal courts may not disturb the judgments of state courts unless 'each ground supporting the state court decision is examined and found to be unreasonable.'"  *Id*. at 524 (quoting *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012)).  Thus, the Court explained, "if a fair-minded jurist could agree with either [the state court's] deficiency or prejudice holding, the reasonableness of the other is 'beside the point.'" *Id*.

In resolving Diaz' ineffective assistance of counsel claim, the Superior Court identified the correct standard.  *See Diaz*, 2019 WL 6999901 at *4-5 (citing *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).  Courts in the Commonwealth of Pennsylvania have adopted the *Strickland* standard to evaluate claims of ineffective assistance of counsel under Pennsylvania law.  *See Pierce*, 527 A.3d at 975-77; *see also Werts v. Vaughn*, 228 F.3d 178, 202-203 (3d Cir. 2000) (concluding that Pennsylvania standard for judging ineffectiveness claims is identical to the *Strickland* standard).  Therefore, the Pennsylvania Superior Court's resolution of Diaz' claims of ineffective assistance of counsel is presumed to apply clearly established federal law and is afforded the deference required by 28 U.S.C. § 2254(d).  The only issue then is whether the Superior Court unreasonably applied the *Strickland* test.  This is a doubly-deferential review. *See Harrington*, 562 U.S. at 101.  As the Supreme Court explained,

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is

> "doubly" so. The *Strickland* standard is a general one, so the range
> of reasonable applications is substantial. Federal habeas courts
> must guard against the danger of equating unreasonableness under
> *Strickland* with unreasonableness under § 2254(d).

*Id.*, at 105 (internal citations omitted).  "Establishing that a state court's application of *Strickland*
was unreasonable under § 2254(d) is ... difficult." *Id.* "Section 2254(d) reflects the view that
habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not
a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v.
Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).  Therefore, to obtain habeas
relief from a federal court, "a state prisoner must show that the state court's ruling on the claim
being presented in federal court was so lacking in justification that there was an error well
understood and comprehended in existing law beyond any possibility for fair-minded
disagreement." *Id.* at 103.

To assess whether trial counsel was deficient under *Strickland*, the Court must assess the
reasonableness of counsel's decision not to object to the prosecutor's closing statement.  This
necessitates an analysis of the prosecutor's remarks pursuant to a test set out in *Commonwealth
v. Clancy*, 192 A.3d 44, 62 (Pa. 2018).  *Clancy* mandates a two-part inquiry: "1) does the
substance of the remarks relate to the facts of the case, the elements of the crimes charged and
constitute a fair and reasonable rebuttal to the defense's arguments, and 2) do the remarks have a
prejudicial effect on the jury." *Id.; see also Stewart v. Tice*, 2021 WL 7287066 at *7 (M.D. Pa.
Oct. 26, 2021) (applying *Clancy*).  In rejecting this claim, the Superior Court concluded that trial
counsel's failure to object to the prosecutor's remark was unlikely to have affected the outcome
of the trial and did not constitute a serious error, as required by *Strickland. See Diaz*, 2019 WL
6999901 at *7; *see also Strickland*, 466 U.S. at 687; *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).

The Superior Court reviewed the prosecuting attorney's statements and concluded that it was not an "invalid reflection of the evidence presented at trial." *Diaz*, 2019 WL 6999901 at *6. The state court quoted the statements of the prosecuting attorney during Diaz' PCRA hearing and concluded that her comments were "an effort to present the Commonwealth's version of what the evidence established." *Id.* And, even if the prosecutor's comments were inaccurate, the Superior Court concluded that her comments would not have mandated a new trial. *Id.* The court concluded her statement was merely a "passing comment" concerning "where [Diaz'] cell phone was picking up on a particular tower" and consequently "did not have the unavoidable effect of prejudicing the jurors." *Id.*

Given these facts as found by the state court and as reflected in the record, this Court cannot conclude that the Superior Court's decision was based on an unreasonable determination of the facts. Instead, the Superior Court analyzed the evidence presented at trial and in the post-conviction hearing and concluded that the prosecutor's remarks were appropriate commentary based on the evidence. Moreover, with respect to the second inquiry, this Court also agrees with the Superior Court's conclusion that the jury was not prejudiced because the prosecutor's statement was not an inaccurate reflection of the testimony at trial. *See Diaz*, 2019 WL 699901, at *7. Thus, Diaz' ineffective assistance of trial counsel claim does not entitle him to relief.

      D.    Diaz' actual innocence serves as a gateway through which he may introduce any and all claims that may be waived.

Next, Diaz raises a claim of actual innocence which, he argues, rescues his claims from procedural default. *See* ECF No. 10, p. 34. First, to the extent Diaz is raising a freestanding actual innocence claim (in addition to his gateway actual innocence claim), that claim must be rejected. In the Third Circuit, "[i]t has long been recognized that '[c]laims of actual innocence based on only newly discovered evidence' are never grounds for 'federal habeas relief absent an

26

independent constitutional violation.'" *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004)

(quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Albrecht v. Horn*, 485 F.3d 103, 121-22

(3d Cir. 2007). However, the Supreme Court has yet to definitely resolve the issue. *See Reeves*

*v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018). The Court of Appeals has further

explained that to the extent freestanding actual innocence claims are cognizable, they must be

"assessed under a more demanding standard [than a gateway actual innocence claim], since the

petitioner's [freestanding] claim is that his conviction is constitutionally impermissible 'even if

his conviction was the product of a fair trial[.]'" *Id.* (quoting *Schlup*, 513 U.S. at 316 and citing

*House v. Bell*, 547 U.S. 518, 555 (2006)). It suffices to say that if indeed a freestanding claim of

actual innocence could be brought in a non-capital federal habeas case such as this one, Diaz has

fallen short of offering the type of evidence of innocence that would entitle him to habeas relief

given that he has not satisfied the lesser (although still demanding) standard that applies to

gateway actual innocence claims.

Instead, Diaz' petition asserts that he can excuse the procedural default of his claims

through the fundamental miscarriage of justice exception (also known as the actual innocence

exception) as noted in *Schlup, supra*. That decision provides a gateway for habeas petitioners to

excuse procedural default if they can prove that they are actually innocent. *Schlup*, 513 U.S. at

321. This gateway "should open only when a petitioner presents 'evidence of innocence so

strong that a court cannot have confidence in the outcome of the trial unless the court is also

satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 316. Here, Diaz has

not demonstrated that his is an "extraordinary case" meriting relief under *Schlup* because he has

failed to carry his burden of producing "new reliable evidence." *Id.* at 324. Diaz argues that

Exhibit 4, a copy of a Google map showing "the distance it will take to get to the nearest cell

phone tower at 1001 State Street to the crime scene," shows that it was impossible for him to

have committed the crime because cell phone records showed him registering on a cell phone

tower even further from the scene.  ECF No. 10, p. 35.  Diaz argues that "the Commonwealth

claim [sic] the shooting happened around 2:42 AM. [Petitioner's] phone ringed at 2:35. If his

west of the 1001 tower and ended far the west of the 230 West 25th Street tower at 2:36 AM.  At

2:43 AM the phone was even further hitting 1421 West 12th St."  *Id.*  This information and his

argument were presented at trial and, thus, are not new.  As the Superior Court explained,

> Raymond MacDonald, a senior manager of the law enforcement
> management group for T-Mobile, verified that phone calls made
> from the phone [Diaz] was carrying just prior to his arrest placed
> him in the vicinity of the murder when it occurred.  [Diaz] offered
> an expert who offered the contrary opinion that the phone records
> placed [Diaz] anywhere from .84 to 2.75 miles from the scene at
> the time of the shooting.

*Commonwealth v. Diaz*, 2016 WL 4708937, at *1–2 (Pa. Super. Ct. June 24, 2016).  Evidence is

not "new" if it was available at trial.  *Williams v. Pennsylvania*, 2021 WL 3472413, at *3 (M.D.

Pa. Aug. 7, 2021) (citing *Hubbard v. Pinchak*, 378 F.3d 333, 340-41 (3d Cir. 2004) (stating that

a petitioner's allegation of actual innocence is "nothing more than a repacking of the record as

presented at trial" and thus he could not show that it is more likely than not that no reasonable

juror would have convicted him in light of the new evidence).

　　　Thus, because Diaz' case is not one of those rare instances where the petitioner has

presented new reliable evidence that was not previously available, he cannot use the *Schlup*

actual innocence gateway to overcome his procedural default, and this claim will be denied.

　　　E.　　Diaz' claim of cumulative error fails.

　　　Finally, Diaz claims that the cumulative effect of all his alleged errors entitle him to

habeas relief.  *See* ECF No. 10, p. 37.  He did not, however, raise this claim to the Superior Court

in either his direct appeal or his appeal from the denial of post-conviction relief.  As such, the Respondents argue his claim of cumulative error is unexhausted and procedurally defaulted.  The Court agrees.

And in any event, "[b]efore there can be cumulative error, there must be more than one error to accumulate." *Peoples v. DelBaso*, 2021 WL 5748942, at *29 (E.D. Pa. Aug. 24, 2021). "Absent such errors … the cumulative error doctrine does not apply." *Id.* (quoting *Stokes v. Giroux*, 2015 WL 9915957, at *26 (E.D. Pa. Aug. 11, 2014). *See also United States v. Narducci*, 18 F. Supp. 2d 481, 502 (E.D. Pa. 1997) (noting "cumulative effect of each non-error does not add up to ineffective assistance of counsel: zero plus zero is still zero").  Diaz has not established that any errors exist that, when combined, would result in a cumulative prejudicial impact. Because the Court has rejected each of his claims, it also denies this claim.

V.      Certificate of Appealability

As set out in 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 481 (2000)).  Here, there is no basis for the issuance of a COA and accordingly, none will issue.

VI.     Conclusion and Order

        Based on the foregoing, Petitioner Diaz' application for a writ of habeas corpus, (ECF

No. 10), is denied.  A Certificate of Appealability will not issue.

        Entered and Ordered this 7th day of April, 2022.


                                        BY THE COURT:


                                        RICHARD A. LANZILLO
                                        UNITED STATES MAGISTRATE JUDGE